## Eggers v. Propert et al.

*Herman Steerman,* for plaintiff.

*Alexander E. Bragdon,* for defendant Propert.

*Albert M. Hoyt, Jr.,* for defendant Philadelphia Saving Fund Society.

*Ira J. Williams,* for defendant Central-Penn National Bank.

SMITH, P. J., April 19, 1944.—This matter comes before the court on preliminary objections filed to the bill of complaint by Joseph Propert, one of the defendants.

Plaintiff and defendant Joseph Propert are sister and brother, and the only children of Harry P. Propert, who died on December 30, 1943. On May 1, 1940, Harry P. Propert executed his last will and testament, leaving his entire estate to his son, the said Joseph Propert. On or about February 15, 1941, the said Harry P. Propert caused certain bank accounts, then standing in his name, and a safe deposit box belonging to him, to be transferred to a joint account in the names of Harry P. Propert and defendant Joseph Propert with the right of survivorship. The said plaintiff, Sarah Jane Propert Eggers, has filed a caveat with the Office of the Register of Wills of the County of Philadelphia against the probating of the will of her father, Harry P. Propert. She now files this bill of complaint,

stating, inter alia, that, for some time prior to the executing of the last will and testament and the transfer of the said bank accounts and the safe deposit box, the said Harry P. Propert was approximately eighty years of age, in poor physical and mental condition due to physical ailments and the infirmity of old age, and that while under the undue influence of his son, Joseph Propert, and because of the confidential relationship existing between them, he was caused by the said Joseph Propert to make the said transfers of the said bank accounts and the said safe deposit box and to execute the said last will and testament. The bill of complaint further avers that defendant Joseph Propert has caused to be removed from the said safe deposit box moneys, stocks, and other valuable things.

The bill of complaint prays for an accounting of the articles of personal property taken out of the deposit box by Joseph Propert and that he turn over to the complainant such portion of the assets as rightfully belong to her under the intestate laws of the Commonwealth of Pennsylvania, that defendant Joseph Propert be restrained from withdrawing any of the funds from the said bank accounts which had been in the names of Harry P. Propert and Joseph Propert, and the banks be enjoined from permitting Joseph Propert to withdraw any of the funds until further order of this court.

The preliminary objections filed by defendant Joseph Propert question the jurisdiction of this court and state that complainant has no property right in the subject matter of this suit; that there is no privity between complainant and Joseph Propert such as to give her the right to sue; that she has shown no injury that she will sustain; and that the averments of said bill of complaint are vague and uncertain.

It is manifest that this court has no jurisdiction over the estate of Harry P. Propert, deceased, and that the orphans' court of this county has already assumed ju-

risdiction thereof. The claim made by complainant that certain property vested in her under the intestate law at the death of her father cannot now be sustained. The deceased left a last will and testament wherein he left his estate to defendant Joseph Propert and named him the representative of his estate. The burden is on complainant in the proper tribunal to prove that defendant procured the execution of this will by undue influence. If she fails in that proof, the orphans' court will reject her claim and leave the property of the estate as devised and bequeathed. She has filed her caveat with the register of wills and the matter of the estate is now in the proper jurisdiction of the orphans' court.

When it comes to the bank accounts and the safe deposit box in the several banks, a different question presents itself which plaintiff has confused with the legality of the will. The bank accounts and the safe deposit box, as the matter now appears, are not a part of decedent's estate and the orphans' court has no jurisdiction as to them. In Williams' Estate, 236 Pa. 259, 270, it was held:

"The jurisdiction of the Orphans' Court is limited to the estate of which the testator died seized. With respect to such estate it has full jurisdiction; but this marks its ultimate limit. Whether a specific article of property belongs to the estate, is a question standing in limme; if it does not, the executor is not accountable therefor, and it is beyond the power of the court to control it in any way or charge liability on any one in connection therewith . . . . If at testator's death the property is shown to have been in his possession, or if for any other reason it was presumptively his, a mere denial of his ownership unsupported will not oust the court of its jurisdiction, but the court may proceed with its investigation so far as to inform itself, whether the denial is made in good faith and a substantial dis-

pute exists. If the dispute be a substantial one, and the title be really involved, may the court further proceed to settle and determine the matter in dispute? Certainly no authority to do so can be found within the terms of the statute, and we think it quite as clear that it cannot be implied from anything in the act. . . . Such muniments of title as those upon which this accountant here rested may be overcome and oftentimes are, but the assault upon them cannot be carried on in the Orphans' Court . . . We must assume that the evidence offered by the exceptants showed a substantial dispute as to the validity of the written assignment. The question thus presented was a preliminary one on the determination of which the jurisdiction of the Orphans' Court depended. . . . Having once determined that a substantial dispute existed as to the ownership of these securities . . . the court should have at once directed an issue to the Common Pleas as it is empowered to do by the Act of March 29, 1832, P. L. 190. A verdict upon the issue would have been more than advisory; unreversed, it would have been conclusive . . ."

If the said transfer was a bona fide transaction, then it would appear that plaintiff has no property right in the said accounts or the contents of the said safe deposit box. Again if plaintiff is able to present proper proof that the transfer of the said accounts and the property in the said safe deposit box was induced by undue influence exercised by defendant Joseph Propert, while he enjoyed a confidential relationship with his aged and infirm parent, even then the property held by the banks does not belong to the estate of decedent at the time of his death. It is well-settled law that the orphans' court has jurisdiction only of the estate of a decedent of which he died possessed. By the transfer of the property to himself and his son jointly with the right of survivorship, Harry P. Propert has released his sole and

complete dominion over his property in the said banks. It is not a tentative trust revocable at will during the lifetime of the depositor, such as existed in the case of In re Totten, 179 N. Y. 112, where the depositor retained unto himself complete control of the fund during his life, with a provision to secure to the beneficiary any balance standing in the account at the death of the depositor. In a trust of that nature it would have been revocable by will. But here the transfer was made subsequent to the signing of the will and must, prima facie, be construed as favorable to the beneficiary even as against the donor. However, where it is averred that the donee has taken title to property as the result of some fraud or misconduct or some illegal act on his part, the law may imply, if the facts averred are susceptible of proper proof, that a trust relation between the father and son did exist. It is commonly called a trust ex maleficio or a trust ex delicto. A trust of this nature differs from other trusts in that it was not within the intention or contemplation of the parties at the time the contract was made: Chadwick v. Arnold et al., 34 Utah 48, 60. It may arise where a donee acquires a right of property as the result of undue influence or other abuse of his confidential relationship to the donor in procuring the gift. This confidential relationship may exist between an aged and mentally infirm parent and one of his children whom he has in fact been accustomed to rely upon and to be guided by in his transactions, and in whom he has placed implicit confidence that the said child will act to the best interest of the aged and infirm parent.

In Shaffer v. Shaffer, 344 Pa. 158, 162, it was held:

"It is well established that when one in a position of trust or confidence receives a gift inter vivos from his confidant, if the transaction is questioned he must prove affirmatively that it is unaffected by any taint of undue influence, imposition or deception . . ."

It has been argued that, since this property will become a part of decedent's estate if the contention of plaintiff is successful, the action should have been instituted by a representative of the estate. With this contention we do not agree. We are not now concerned with the matter of decedent's estate. This is a rather exceptional state of facts and we believe that this court has complete jurisdiction. When we examine the right of plaintiff to institute this action we must realize that the parties litigant are the sole heirs of the said Harry P. Propert, as if in fact he had left no will. If he should be found to have died intestate as to the property in question, the plaintiff has a right to assert her claim. In the case of Roberts et al. v. Messinger et al., 134 Pa. 298, 309, it was held:

"While it is true that administration is the legally-appointed channel through which an absolute title to personal property of an intestate is acquired, it is equally true that the property of such intestate passes at his death to those legally entitled to the succession, subject to the claims of creditors and the laws in force for administering it; but, if there be no debts to pay and no distribution needed, administration is not indispensable to that dominion over the property which is necessary to maintain trespass, trover, or an action of account render . . ."

It would be highly improper and inequitable to force this plaintiff in an action against her brother, the defendant, to depend upon him as a representative of his deceased father's estate to take this action. Therefore we believe that it is perfectly proper for her to be the complainant in this case. The bill itself is not vague. There are sufficient averments therein to put defendant upon notice as to what charges he may expect to meet at the time of trial. He should therefore require an answer on the merits of the case itself.

We believe that it may be well for the chancellor before whom this case may appear to defer his ad-

judication until the matter now before the orphans' court has been decided by that tribunal. The same charges of confidential relationship and undue influence are also raised in that action. It may be expedient for the testimony to be heard by the orphans' court on this issue of fact and an adjudication filed, before this court by its chancellor hands down its findings of·fact, conclusions of law, and a decree in the matter before us.

### Order

And now, to wit, April 19, 1944, the preliminary objections filed by Joseph Propert to the bill of complaint are not sustained. Defendant shall file an answer on the merits of the case within 15 days.