Rankin, Appellant, v. Kabian, Appellant.

Argued January 8, 1964. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William M. Marutani,* with him *MacCoy, Evans & Lewis,* for plaintiff.

*Arthur Silverman,* with him *Ettinger, Gallagher & Silverman,* for defendant.

OPINION BY MR. JUSTICE COHEN, June 1, 1964:

The executor of the Estate of Margaret I. Rankin filed a complaint in equity in the court of common pleas to recover securities delivered as collateral for a loan to Ludwig J. Kabian and money allegedly loaned by decedent to Kabian. The chancellor found for the estate as to the securities but found for Kabian on the alleged indebtedness. Exceptions to the chancellor's findings of fact and conclusions of law filed by plaintiff and defendant were dismissed by the court en banc. Both parties appealed.

A fair recital of the facts is as follows: For thirteen years prior to her death at age 74, Margaret I. Rankin served as bookkeeper for Kabian's laundry business. In addition, Miss Rankin and Kabian entered into various transactions involving securities, including loans,

sales, purchases and joint ventures. Before July, 1956, Miss Rankin deposited certain securities with the Girard Trust Corn Exchange Bank as collateral for a loan in her name. In early July, 1956, the bank, at Miss Rankin's request, forwarded these securities to a New York brokerage firm, Josephthall & Co. (Broker), where they were used as collateral for a loan by Broker to Kabian in the latter's name. Since the securities were originally registered in Miss Rankin's name but were to be used as collateral for Kabian's loan, Broker required Miss Rankin to execute the following hypothecation certificate:

"July 6, 1956

. . .

"I (we) herewith deliver to you the following securities, duly assigned in blank: [listing of certificate numbers, names and quantities of securities.]

"Registered in the name of Margaret I. Rankin which please credit to and carry for the account and as the property of Ludwig Kabian.

"I (we) hereby confirm that I (we) relinquish all right thereto."

Kabian contends that he received the securities as an inter vivos gift and points solely to this hypothecation certificate as evidence thereof. The estate alleges that the securities were merely delivered to Broker for use as collateral for Kabian's loan. The court en banc having affirmed the chancellor's findings, they are entitled to the weight of a jury verdict and we are limited to a consideration of whether such findings are supported by sufficient evidence and whether the court below committed an error of law. *Reifschneider v. Reifschneider*, 413 Pa. 342, 344, 196 A. 2d 324, 325 (1964); see *Brightbill v. Boeshore*, 385 Pa. 69, 79, 122 A. 2d 38, 43 (1956).

The well settled prerequisites to establishing an inter vivos gift are donative intent and delivery with

intent to vest title in the donee. *Thompson v. Curwensville Water Company,* 400 Pa. 380, 162 A. 2d 198 (1960) ; *Brightbill v. Boeshore,* supra. Furthermore, the existence of these elements, where a gift is claimed against a decedent's estate, must be supported by clear, direct, precise and convincing evidence. *Sivak Estate,* 409 Pa. 261, 265, 185 A. 2d 778, 780 (1962). Our review of the record supports the chancellor's finding that Kabian has not established the first of these prerequisites.

The standard printed hypothecation certificate of Broker, standing alone, does not clearly and convincingly indicate a donative intent. Broker's representative stated that the hypothecation certificate was "never . . . released to Ludwig J. Kabian or anyone acting in his behalf" and was obtained "for the use and benefit of Josephthal & Company". It was the standard form used ". . . when securities are delivered to Josephthal for the account of a customer but are registered in the name of another person. . . ." Furthermore, other evidence indicates a complete absence of donative intent. Subsequent to the alleged gift, the decedent reported the securities as her property in her personal property tax return. In addition, Kabian continued to pay her the dividends that would be payable on such securities. The unlikelihood of the alleged gift is further confirmed by the exhibits of both parties which unmistakedly demonstrate that Miss Rankin and Kabian adhered to a practice of accounting to each other literally to the penny. Cf. *Brightbill v. Boeshore,* supra. Therefore, Kabian having failed to produce clear and convincing evidence of a donative intent, the lower court was fully justified in finding against the existence of a valid inter vivos gift of the securities.[1]

---

[1] In view of this finding, we need not decide whether the requirement of delivery with intent to divest has been met.

Kabian further contends that if the facts were as the lower court found them to be, the common pleas court was divested of jurisdiction to determine the rights to these securities because, under these facts, the orphans' court has exclusive jurisdiction. He relies upon the lower court's finding that *"at or before her death*[2] decedent was the registered owner of the . . . securities . . ."* and the Orphans' Court Act of 1951, P. L. 1163, §301, as amended, 20 P.S. §2080.301 (Supp. 1963) which provides that "[t]he orphans' court shall have exclusive jurisdiction of . . . (13) . . . [t]he adjudication of the title to personal property . . . registered in the name of the decedent or his nominee . . . *at the time of his death."* (Emphasis supplied). Kabian's contention is without merit.

It is unquestioned that the court of common pleas has jurisdiction to determine the ownership of securities in the absence of elements which would oust it of jurisdiction. See Act of October 13, 1840, P. L. (1841) 1, §19, 17 P.S. §284; Act of June 16, 1836, P. L. 784, §13, 17 P.S. §§281, 282(II)(IV). Registration in the decedent's name *at the time of death* is an element which would place exclusive jurisdiction in the orphans' court. The only evidence presented by Kabian on the question of registration at death was a statement in the hypothecation certificate that the attached securities were then registered in Miss Rankin's name. It is undisputed that this certificate was executed three years before Miss Rankin's death.[3] There is a

[2] This finding was made in reference to the burden of proof in establishing donative intent and not on the question of jurisdiction. The lower court could not and did not find that the securities were registered in Miss Rankin's name *at* the time of her death.

[3] The hypothecation certificate also stated that the securities were duly assigned in blank. This clothed Broker with the power to transfer the securities to anyone and to register them in a name other than decedent's.

complete lack of evidence on the name in which the securities were registered *at her death*. Kabian has therefore failed to produce any evidence on the issue he asserts would divest the common pleas court of its jurisdiction. Hence, common pleas jurisdiction was proper.

In addition, the executor cross-appealed from the lower court's ruling in favor of Kabian as to the latter's alleged indebtedness to Miss Rankin. The evidence presented consisted solely of notations on papers written by Miss Rankin which reflected accountings of transactions between Kabian and herself. Our review of the record compels us to agree with the court below that these particular writings ". . . were not admissible to prove defendant's indebtedness" and that "[e]ven if they were admissible, as, by a violent stretching of the term, regular business entries, they are so vague and confusing as to be valueless as evidence." Further, as the court below said, "[t]hese writings would not support a claim if Miss Rankin were alive. Her death does not give them probative value."

Accordingly, we affirm the decree of the lower court.

Decree affirmed. Each party to pay his own costs.

Mr. Justice ROBERTS concurs in the result.